COPY

Martin J. Barab (State Bar No. 47419)
mbarab@hamricklaw.com
A. Raymond Hamrick III (State Bar No. 93821)
aray@hamricklaw.com
Robert P. Mitrovich (State Bar No. 134662)
rmitrovich@hamricklaw.com
HAMRICK & EVANS, LLP
111 Universal Hollywood Drive, Suite 2200
Universal City, California 91608
Telephone No.: (818) 763-5292
Fax No.: (818) 763-2308

Attorneys for Plaintiffs STEVEN PAUL; CRYSTAL SKY ENTERTAINMENT LLC; CRYSTAL SKY PROPERTIES, LLC; SEASIDE ENTERTAINMENT, LLC; CS FILMS, LLC; CS DEVCO, LLC; BRATZ LLC; BRATZ 2, LLC; SP ENTERTAINMENT, LLC; BIG STAN PRODUCTIONS LLC; CRYSTAL SKY PICTURES LLC; CRYSTAL SKY LLC; CRYSTAL SKY WORLDWIDE SALES LLC; OPPOSITE DAY DISTRIBUTION LLC; PRODUCTION SERVICES LLC; BABY GENIUSES 2 LLC; CRYSTAL SKY RELEASING LLC; SOHO SQUARE FILMS, LTD.; HADOR FILM PRODUCTIONS, LTD.; HADOR BG 2 PRODUCTIONS, LTD., and DOGGIE DOG WORLD LLC

FILED
CLERK, U.S. DISTRICT COURT
NOV 20 2009
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

STEVEN PAUL, an individual, CRYSTAL SKY ENTERTAINMENT LLC, a California Limited Liability Company; CRYSTAL SKY PROPERTIES, LLC, a California Limited Liability Company; SEASIDE ENTERTAINMENT, LLC, a California Limited Liability Company; CS FILMS, LLC, a California Limited Liability Company; CS DEVCO, LLC, a California Limited Liability Company; BRATZ LLC, a California Limited Liability Company; BRATZ 2, LLC, a California Limited Liability Company; SP ENTERTAINMENT, LLC, a New Mexico Limited Liability Company; BIG STAN PRODUCTIONS LLC, a California Limited Liability Company; CRYSTAL SKY PICTURES LLC, a California Limited Liability Company; CRYSTAL SKY LLC, a California Limited Liability Company; CRYSTAL SKY WORLDWIDE SALES LLC, a California Limited Liability Company; OPPOSITE

Case No.: CV09 08560 DSF (SHx)

**COMPLAINT FOR:**

**(1) COPYRIGHT INFRINGEMENT**
**(2) FRAUD**
**(3) CONVERSION**
**(4) INTENTIONAL INTERFERENCE WITH CONTRACT**
**(5) INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY**
**(6) BREACH OF FIDUCIARY DUTY**
**(7) RECOVERY OF USURIOUS INTEREST**
**(8) DECLARATORY RELIEF AND**
**(9) INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**



HAMRICK & EVANS, LLP

DAY DISTRIBUTION LLC, a California Limited Liability Company; PRODUCTION SERVICES LLC, a California Limited Liability Company; and BABY GENIUSES 2 LLC, a California Limited Liability Company; CRYSTAL SKY RELEASING LLC, a California Limited Liability Company; SOHO SQUARE FILMS, LTD., a United Kingdom Company; HADOR FILM PRODUCTIONS, LTD., a United Kingdom Company; and HADOR BG PRODUCTIONS, LTD., a United Kingdom Company and DOGGIE DOG WORLD LLC, a California Limited Liability Company

Plaintiffs,

v.

EYP, LTD., a Cayman Islands Company; CEDAR LANE ASSET MANAGEMENT, LLC a New York Limited Liability Company; CEDAR LANE ENTERTAINMENT FUND, LTD., a Cayman Islands Company; ANDREW DEAN, an individual; CHRIS MARETT, an individual; SAMUEL ADAMS, an individual; LUCIE GUERNSEY, an individual, MARK LAMAGNA, an individual, ROBERT RICCIARDELLI, an individual, and DOES 1 through 10, Inclusive,

Defendants.

Plaintiffs STEVEN PAUL; CRYSTAL SKY ENTERTAINMENT LLC; CRYSTAL SKY PROPERTIES, LLC; SEASIDE ENTERTAINMENT, LLC; CS FILMS, LLC; CS DEVCO, LLC; BRATZ LLC; BRATZ 2, LLC; SP ENTERTAINMENT, LLC; BIG STAN PRODUCTIONS LLC; CRYSTAL SKY PICTURES LLC; CRYSTAL SKY LLC; CRYSTAL SKY WORLDWIDE SALES LLC; OPPOSITE DAY DISTRIBUTION LLC; PRODUCTION SERVICES LLC; and BABY GENIUSES 2, LLC; CRYSTAL SKY RELEASING LLC; SOHO SQUARE FILMS, LTD.; HADOR FILM PRODUCTIONS LTD.; HADOR BG2 PRODUCTIONS LTD. and DOGGIE DOG WORLD LLC as and for their Complaint against Defendants EYP, LTD.; CEDAR LANE ASSET MANAGEMENT, LLC; CEDAR LANE ENTERTAINMENT FUND, LTD; ANDREW DEAN; CHRIS MARETT; SAMUEL ADAMS; LUCIE GUERNSEY; MARK LAMAGNA, and ROBERT RICCIARDELLI allege as follows:

///



HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

## JURISDICTION AND VENUE

1. This is an action for Copyright Infringement arising under the Copyright Act of 1976, 17 U.S.C. Sections 101 et seq., and amendments thereto, and for related causes of action for Fraud, Conversion, Intentional Interference with Contract, Intentional Interference with Business Expectancy, Recovery of Usurious Interest, Declaratory Relief and Injunctive Relief. This Court has jurisdiction over this action under 28 U.S.C. Section 1331, 1338 and under its supplemental jurisdiction pursuant to 28 U.S.C. Section 1367. This Court has further jurisdiction over the subject matter in this action pursuant to the provisions of 28 U.S.C. Section 1332. The amount in controversy exceeds $75,000 exclusive of interest and costs.

2. Venue is proper in this District under 28 U.S.C. Section 1391(a)(1)(2) and/or (3) and Section 1400(a).

## THE PARTIES

3. Plaintiff Steven Paul is a citizen of and resides in the State of California, County of Los Angeles.

4. Plaintiff CRYSTAL SKY ENTERTAINMENT LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

5. Plaintiff CRYSTAL SKY PROPERTIES, LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

6. Plaintiff SEASIDE ENTERTAINMENT, LLC, is a California Limited Liability Company with its principal place of business at all times herein mentioned, in Los Angeles County, California.

7. Plaintiff CS FILMS, LLC, is a California Limited Liability Company with its principal place of business at all times herein mentioned, in Los Angeles County, California.

///

8. Plaintiff CS DEVCO, LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

9. Plaintiff BRATZ LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California, and holds the copyright to the motion picture Bratz.

10. Plaintiff BRATZ 2, LLC (aka Bratz II LLC) is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

11. Plaintiff SP ENTERTAINMENT, LLC, is a New Mexico Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

12. Plaintiff BIG STAN PRODUCTIONS LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California, and holds the copyright to the motion picture Big Stan.

13. Plaintiff CRYSTAL SKY PICTURES LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

14. Plaintiff CRYSTAL SKY LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

15. Plaintiff CRYSTAL SKY WORLDWIDE SALES LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California.

16. Plaintiff OPPOSITE DAY DISTRIBUTION LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California, and holds the copyright to the motion picture Opposite Day.

17. Plaintiff PRODUCTION SERVICES LLC, is a California Limited Liability Company with its principal place of business at all times herein mentioned, in Los Angeles County, California.

HAMRICK & EVANS, LLP

18. Plaintiff BABY GENIUSES 2 LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles County, California, and holds the copyright to the motion picture Baby Geniuses 2.

19. Plaintiff CRYSTAL SKY RELEASING LLC, is a California Limited Liability Company, with its principal place of business at all times herein mentioned, in Los Angeles, County, California.

20. Plaintiff SOHO SQUARE FILMS, LTD., a company with limited liability formed under the laws of the United Kingdom, with its principal place of business at all times herein mentioned, in Los Angeles, County, California.

21. Plaintiff HADOR FILM PRODUCTIONS LTD., a company with limited liability formed under the laws of the United Kingdom, with its principal place of business at all times herein mentioned, in Los Angeles, County, California, and holds the copyright to the motion picture Devil's Chair.

22. Plaintiff HADOR BG 2 PRODUCTIONS LTD., a company with limited liability formed under the laws of the United Kingdom, with its principal place of business at all times herein mentioned, in Los Angeles, County, California.

23. Plaintiff DOGGIE DOG WORLD LLC, is a California Limited Liability Company with its principal place of business, at all times herein mentioned, in Los Angeles, County, California, and holds the copyright to the motion picture Karate Dog.

24. Defendant EYP, LTD., ("EYP" or "Lender") upon information and belief, is and at all times herein mentioned was, a company with limited liability formed under the laws of the Cayman Islands, with its principal place of business located in George Town, Grand Cayman, Cayman Islands, and at all times herein doing business in Los Angeles County, California. Upon information and belief, Defendant EYP, LTD. at all times mentioned herein, was not licensed to conduct business in the State of California, nor was it licensed to engage in the business of a finance lender or broker under the California Finance Lenders' Law.

///

///



HAMRICK & EVANS, LLP

25. Defendant CEDAR LANE ASSET MANAGEMENT, LLC, ("Cedar Lane Asset") upon information and belief, is and at all times mentioned was, a company with limited liability formed under the laws of New York State, with its principal place of business located in New York, New York, and at all times herein doing business in Los Angeles County, California. Upon information and belief, Defendant CEDAR LANE ASSET MANAGEMENT, LLC, at all times mentioned herein, was not licensed to conduct business in the State of California, nor was it licensed to engage in the business of a finance lender or broker under the California Finance Lenders' Law.

26. Defendant CEDAR LANE ENTERTAINMENT FUND, LTD., (Cedar Lane Entertainment) upon information and belief, is and at all times mentioned was, a company with limited liability formed under the laws of the Cayman Islands, with its principal place of business located in George Town, Grand Cayman, Cayman Islands, and at all times herein doing business in Los Angeles County, California. Upon information and belief, Defendant CEDAR LANE ENTERTAINMENT FUND, LTD. at all times mentioned herein, was not licensed to conduct business in the State of California, nor was it licensed to engage in the business of a finance lender or broker under the California Finance Lenders' Law.

27. Defendant ANDREW DEAN ("Dean") upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the Cayman Islands.

28. Defendant CHRIS MARETT ("Marett") upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the Cayman Islands.

29. Defendant SAMUEL ADAMS ("Adams") upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the State of Connecticut.

30. Defendant LUCIE L. GUERNSEY ("Guernsey") upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the State of New York.

31. Defendant MARK LAMAGNA, ("LaMagna") upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the State of Connecticut.

32. Defendant ROBERT RICCIARDELLI, (Riciardelli) upon information and belief, is and at all times herein mentioned was, a citizen of and resides in the State of New York.

33. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as Does 1-10 and therefore sue them by these fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs damages were proximately caused by their conduct.

34. Plaintiffs allege on information and belief that there exists, and at all times relevant existed, a unity of ownership between Defendants Cedar Lane Assets, Cedar Lane Entertainment and EYP, such that any individuality and separateness between them has ceased. EYP, Cedar Lane Assets, and Cedar Lane Entertainment, are, and at all relevant times were, the alter-ego of each other. Adherence to the fiction of the separate existence of Defendants Cedar Lane Assets, Cedar Lane Entertainment and EYP, and the remaining defendants and each of them, as entities distinct from each other would promote injustice by protecting one from the prosecution for their own wrongful acts committed under the name of the other. Plaintiffs allege upon information and belief that Defendants Cedar Lane Assets, Cedar Lane Entertainment and EYP, and the remaining defendants and each of them, in carrying out the conduct complained of herein, were acting together in a joint venture, and that each party of the joint venture contributed to the management expertise, capital, and shares in the profits and losses.

35. Plaintiffs further allege upon information and belief that Defendant Cedar Lane Assets owned, operated, managed, maintained and controlled the activities of Defendants EYP and Cedar Lane Entertainment. The activities, acts and omissions of EYP and Cedar Lane Entertainment are, and were the activities of Cedar Lane Assets. EYP performed administrative functions on behalf of Cedar Lane Entertainment and Cedar Lane Assets, and was responsible for the wrongful conversion of Plaintiffs' rights as herein alleged. Cedar Lane Assets, Cedar Lane Entertainment, and EYP will collectively be referred to as EYP, except when hereafter discussed separately.

///

///

36. At all times herein mentioned, Defendants, and each of them, were the agents and/or employees and/or owners and/or controlling officers and/or servants and/or co-conspirators of the other Defendants, and each of them, and while engaged in the acts and conduct described herein were acting within the course and scope of that agency or employment or conspiracy or committed acts which were foreseeable and under the control or direction of Defendants, and each of them, given the particular knowledge that Defendants, and each of them, hold in these matters.

## NATURE OF THE ACTION

37. This action arises out of Defendants' purposeful and wrongful interpretation, application and enforcement of loan agreement provisions, self-serving, wrongful and unauthorized execution of documents as purported Attorneys in Fact, and the illegal and fraudulent taking of rights to motion picture copyrights and other assets from Plaintiffs through an illegal public foreclosure sale which took place in Santa Monica, California on October 16, 2009. Through this illegal foreclosure sale, the Defendants, and each of them, brazenly converted from Plaintiffs all of Plaintiffs' rights, titles and interest in motion picture material, film copyrights and literary material under the guise of a properly noticed foreclosure sale, and also attempted to foreclose on companies and entities which are separate and distinct companies from Plaintiff Crystal Sky Entertainment LLC in this matter. Notably, Defendants have engaged in an egregious pattern and practice of interpreting and executing Powers of Attorney clauses and the execution of unauthorized documents, under the pretext of special Powers of Attorney, to wrongfully obtain rights to motion pictures and other assets which were never the subject of the Loan and Security Agreements and amendments thereto between Plaintiff Crystal Sky Entertainment LLC and EYP. Through the improper use of special Powers of Attorney, the Defendants purportedly sold, assigned, and transferred to EYP as the only bidder in a foreclosure sale, all rights, title and interest with respect to motion pictures and other assets which belonged to Plaintiffs.

///

///

///

HAMRICK & EVANS, LLP

**A. The Secured Credit Facility Agreement**

38. The genesis of this matter arises out of a Secured Credit Facility Agreement dated March 21, 2007, executed between Plaintiff Crystal Sky Entertainment LLC as "Borrower" and Defendant EYP as "Lender" (the "Original Credit Agreement"). In this agreement, EYP agreed to establish a secured credit facility for the benefit of Crystal Sky Entertainment LLC in the aggregate amount of Ten Million Dollars ($10,000,000). A copy of the Original Credit Agreement is attached hereto as Exhibit "1" and incorporated herein by this reference. On behalf of the Lender, Defendant Cedar Lane Asset advanced the initial loan of Five Million Seven Hundred and Fifty Dollars ($5,750,000) from the aggregate amount committed of Ten Million Dollars ($10,000,000) based solely upon the securitization of motion pictures that were previously produced and exploited. These motion pictures are commonly referred to as "library titles" in the motion picture industry. The following pictures, which were produced during the 1980s and 1990s, are the sole collateral for the loan in the Original Credit Agreement:

Arthur's Quest
Avas Magical Adventure
Baby Geniuses 2
Bitter Harvest
Bombshell
Boys Will be Boys
Charley's Ghost Story
Crack in the Mirror
Deadly Exposure
Double O Kid
Emanon
Eternity
Exit In Red
Fallen Angels
Falling In Love Again
Fate
Fortune Hunters
Hail Caesar
Hourglass
Huck and King of Hearts
Illusion
Little Insects
Million to Juan
Modern Adventures of Tom Sawyer
Musketeer
Never Too Young to Die
Prince and the Surfer
She's in Love
Slapstick
The Protector

Tin Soldier
Whispering.

39. The above titles were assigned to Plaintiff Crystal Sky Entertainment LLC by each of the entities that owned and/or controlled each individual film, pursuant to an Assignment Agreement dated March 20, 2007 (the "Assignment Agreement"). A copy of the Assignment Agreement is attached hereto as Exhibit "2" and incorporated herein by this reference. The motion pictures set forth above were listed on Exhibit "A" to the Assignment Agreement and represent the only collateral provided by Crystal Sky Entertainment LLC to the Original Credit Agreement and are not the subject of this litigation. The Assignment was signed by each entity which owned the rights to the above referenced motion pictures. The Assignment granted the rights to each motion picture to Crystal Sky Entertainment LLC. Crystal Sky Entertainment LLC has failed to make the payments as agreed to under the Original Credit Agreement and the Amended and Restated Credit Agreement and have been deemed in default by Defendants.

**B. <u>Amended and Restated Secured Credit Facility</u>**

40. On December 14, 2007, at the request of defendants, and each of them, Crystal Sky Entertainment LLC and EYP entered into an Amended and Restated Secured Credit Facility Agreement (the "Amended and Restated Credit Agreement") which provided for an additional Two Million Two Hundred Fifty Thousand Dollars ($2,250,000), to the $5,750,000 paid under the Original Credit Agreement. This loan primarily was to pay for interest and fees to defendants Cedar Lane and EYP. Plaintiff Crystal Sky Entertainment LLC received no financial benefit from this loan. A copy of the Amended and Restated Credit Agreement is attached hereto as Exhibit "3" and incorporated herein by this reference. Upon information and belief, Plaintiffs allege that portions of the funds went to defendants to make a quarterly principle payment, to refill interest reserves, to pay for costs and fees, to make payments to counsel, and to pay defendants. However, the interest rate of 18% set forth in the Amended and Restated Credit Agreement is usurious and violates the California Finance Lenders Law (*Finance Code* §§ 22000, et seq.) which regulates personal property brokering and consumer and commercial loans, and requires that



HAMRICK & EVANS, LLP

parties engaged in making such loans be licensed under *Finance Code* § 22100. Defendants, and each of them, including Defendant EYP, at all times herein alleged, were not licensed to engage in the business of a finance lender or broker in the State of California, and engaged in usurious activities which violate the California Constitution, Article XV, and the California Finance Lenders Law. California law applies through the Defendants drafting and executing of special Powers of Attorney and in executing on behalf of Plaintiffs as Attorneys' in Fact, a series of Joinder Accommodation Agreements and Accommodation Security Agreements in California which are subject to California law and jurisdiction.

41. The December 14, 2007 Amended and Restated Credit Agreement attempted to add the following additional collateral sources, defined as "Proposed Additional Collateral Sources":

- Opposite Day (Second Position to the Senior Lender ICB Entertainment Finance ("ICB"))
- Big Stan (Second Position to the Senior Lender ICB)
- Devil's Chair (First position – Sony distributing on a distribution basis worldwide)
- Baby Geniuses 2 (Revenues in connection with the Sale from Australia and Germany only)
- Karate Dog (Revenues in connection with the Sale from Australia and Germany only).

However, unlike in the Original Credit Agreement, whereby an Assignment for the various movies listed in paragraph 38 was created and the various entities duly assigned to Crystal Sky Entertainment LLC, as collateral the motion pictures listed in paragraph 38 hereto, and said collateral as to those motion pictures was properly granted, in the Amended and Restated Credit Agreement, none of the Plaintiffs ever assigned, or agreed to assign to any party, the ownership rights to motion pictures, copyrights, property rights, and assets. Furthermore, no "Accommodation Security Agreement" was ever entered into between defendants and the Plaintiff parties who owned and/or controlled the rights to the proposed additional collateral sources. Hence, Crystal Sky Entertainment LLC could not assign any of the rights to the motion pictures

HAMRICK & EVANS, LLP

Opposite Day, Big Stan, Devil's Chair, Baby Geniuses 2 and Karate Dog to Defendant EYP, or any other party because the Plaintiffs never executed assignments of these rights to Crystal Sky Entertainment LLC nor individually (without the use of the invalid Powers of Attorney) entered into a written Joinder agreement as an accommodating party nor ever individually (without the use of the invalid Powers of Attorney) ever executed Accommodation Party Security Agreements granting any of the security foreclosed upon to any of the Defendants and each of them. Thus, the motion pictures and assets listed in the December 14, 2007 Amended and Restated Credit Agreement are not the property of Defendant EYP or any other Defendant, because Crystal Sky Entertainment LLC could not assign these properties to Defendant EYP. The motion pictures listed in paragraph 34 of this Complaint are the only motion pictures or revenue streams ever assigned to Crystal Sky Entertainment LLC and granted to Defendant EYP as valid collateral.

42. Both the Original Credit Agreement and the Amended and Restated Credit Agreement contained in Section 11.3 (a) a limited Power of Attorney clause in which EYP was appointed attorney-in-fact solely for the "Borrower," defined at the very inception of both the Original Credit Agreement and the Amended and Restated Credit Agreement as Crystal Sky Entertainment LLC, "together with its successors and permitted assigns." The attorney-in-fact clause did not pertain to any entity other than Crystal Sky Entertainment LLC, its successors and permitted assigns. Essentially, this clause gave to EYP, and Defendants, and each of them, on behalf of Crystal Sky Entertainment LLC only, the limited ability to (i) receive, take endorse, assign, deliver, accept and deposit, any and all cash, checks, commercial paper or other documents relating to collateral, (ii) exercise any audit, inspection or other rights of the Borrower against any of its obligors in the name of the Borrower or Lender, (iii) notify account debtors or other obligors to make payment directly to Lender, (iv) take steps, actions, suits, or proceedings deemed by the Lender or the Borrower necessary or desirable to effect collection of or other realization upon the



HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

accounts and other Collateral, (v) change the address of the Borrower after default, (vi) to extend time payments, (vii) to execute financial statements in the name of the Borrower, (viii) to obtain insurance, and (ix) to pay or discharge taxes.

43. Neither of the agreements provided for a Power of Attorney clause to be used against Plaintiff Steven Paul individually, any person related to him, or any Plaintiffs other than Crystal Sky Entertainment LLC. Neither Steven Paul, as an individual, nor any of the Plaintiffs other than Crystal Sky Entertainment LLC, were parties to either the Original Credit Agreement or the Amended and Restated Credit Agreement, notwithstanding requests by Defendants, and each of them, that Steven Paul be added. Furthermore, although Defendants, and each of them, requested that Crystal Sky LLC and Steven Paul individually guarantee the Original Credit Agreement and the Amended and Restated Credit Agreement, neither Crystal Sky LLC nor Steven Paul individually agreed to guarantee either the Original Credit Agreement or the Amended and Restated Credit Agreement.

**C. <u>Additional Negotiations and Unconsummated Agreement</u>**

44. Subsequently, after executing the December 14, 2007 Amended and Restated Credit Agreement, discussions and negotiations took place between 2008 and March 2009 between Plaintiff Crystal Sky Entertainment LLC and Cedar Lane Asset, EYP and Defendants, and each of them, for financing projects for other companies including Plaintiff Seaside Entertainment, LLC. Discussions and negotiations also took place regarding Crystal Sky Entertainment LLC obtaining additional finances under the $10,000,000 credit facility, potentially expanding the facility and possibly adding additional collateral.

45. During February and March of 2009, in New York, Defendants, and each of them, were negotiating a Second Amended and Restated Secured Credit Facility Agreement that Plaintiff Crystal Sky Entertainment LLC was asked to sign, and a proposed agreement entitled "Joinder as 'Accommodation Party,'" which all other Plaintiffs were asked to sign as "Accommodating Parties," granting additional security for the credit facility. A copy of the proposed "Joinder as

'Accommodation Party'" is attached hereto as Exhibit "4" and incorporated herein by this reference. Plaintiffs' representatives found these proposed documents unacceptable, refused to sign them, but were willing to continue the negotiations.

46. During this time period, a series of discussions and negotiations took place, and drafts of documents were exchanged. Requests to add parties were considered but the parties could not agree to which parties were to be added as "Accommodating Parties," and to what extent and the type of additional security the proposed "Accommodating Parties" were to grant Defendants and each of them. Apparently, upon information and belief, unhappy with the security it did have, Defendants EYP and Cedar Lane Asset, and all Defendants, and each of them, also demanded a 20% interest in the producing fees of Plaintiff Steven Paul, which he did not agree to. These negotiations had nothing to do with the ownership of any new films, and were not agreed to by Plaintiff Steven Paul. Through the proposed "Joinder as 'Accommodation Party,'" document as submitted, EYP and Cedar Lane Assets sought to have additional parties, unrelated to Crystal Sky Entertainment LLC, be denominated as debtors and convey to Defendants and each of them additional secured interests in various companies, motion pictures and assets which were not part of, nor ever intended to be a part of, either the March 21, 2007 Original Credit Agreement or the December 14, 2007 Amended and Restated Credit Agreement. Specifically, Defendants EYP, Cedar Lane Asset, Adams, Guernsey, Ricciardelli and LaMagna, attempted to coerce Steven Paul, in his representative capacity, to execute on behalf of the parties listed below the proposed "Joinder as 'Accommodation Party'" and grant additional security in the form of films, assets and rights, to Defendants and each of them. This document listed parties to the December 14, 2007 Amended and Restated Credit Agreement and attempted to add new parties as follows:

Big Stan Productions, LLC
Opposite Day Distribution LLC
Doggie Dog World, LLC
Baby Geniuses II, LLC
Soho Square Films, Ltd.
Hador Film Productions, Ltd.



HAMRICK & EVANS, LLP

Hador BG2 Productions Ltd.

Bratz, LLC

Bratz 2 LLC

Production Services, LLC

Crystal Sky Entertainment LLC

Crystal Sky Films, LLC

Crystal Sky Pictures, LLC

Crystal Sky Releasing, LLC

Crystal Sky Worldwide Sales, LLC

Crystal Sky, LLC.

These negotiations were never consummated, and the proposed Second Amended and Restated Secured Credit Facility Agreement and the proposed "Joinder as 'Accommodation Party'" were never executed by any of the Plaintiffs.

47. On or about May of 2009, after Mr. Paul, in his representative capacity, refused to sign the proposed Second Amended and Restated Secured Credit Facility Agreement or the proposed "Joinder as 'Accommodation Party,'" and in an apparent attempt to obtain that which they could not secure through business negotiations, Defendants, and each of them, acting through their counsel, sent to Plaintiffs in Los Angeles, California two documents, the first entitled "Accommodation Security Agreement" and the second entitled "Laboratory Elements Pledge and Security Agreement." A copy of the "Accommodation Security Agreement" is attached hereto as Exhibit "5" and incorporated by this reference. A copy of the "Laboratory Elements Pledge and Security Agreement" is attached hereto as Exhibit "6" and incorporated herein by this reference. These documents were purportedly signed by Defendant Chris Marett, on behalf of EYP as a Director and purportedly on behalf of Crystal Sky Entertainment LLC, as its "Attorney-in-Fact." These documents named several of the Plaintiffs as "Accommodating Parties." However, none of these Plaintiffs entered into agreements with Defendants through any of the transactions which are the subject of this Complaint. Furthermore, with the exception of Plaintiff Crystal Sky Entertainment LLC, none of the remaining Plaintiffs ever entered into a Power of Attorney

HAMRICK & EVANS, LLP

agreement with Defendants, and further, none of the Plaintiffs ever assigned to Crystal Sky Entertainment LLC the motion pictures, nor any of their assets, listed in paragraph 48, which are the subject of this action. Thus, neither Defendants EYP nor Marett, nor any other Defendant, had the right, authority or consent to execute the "Accommodation Security Agreement" and the "Laboratory Elements Pledge and Security Agreement" on behalf of any Plaintiffs other than Crystal Sky Entertainment LLC. In addition, none of the Plaintiffs listed in paragraph 46 gave Crystal Sky Entertainment LLC the right to sign any document or security agreement or power of attorney on their behalf. Nor did Defendant Chris Marett have the right and power to sign the "Accommodation Security Agreement" and the "Laboratory Elements Pledge and Security Agreement" as Attorney in Fact on behalf of Crystal Sky Entertainment LLC because these Plaintiffs, never executed an assignment giving either EYP or Crystal Sky Entertainment LLC the right to act as Attorney in Fact. Through the improper and invalid use of the Power of Attorney clause in the December 14, 2007 Amended and Restated Credit Agreement, EYP, and Defendants and each of them, wrongfully converted and stole all the assets to the entities listed in paragraph 46 as purported "Accommodation Parties."

48. These parties, Big Stan Productions, LLC, Opposite Day Distribution LLC, Doggie Dog World, LLC, Baby Geniuses II, LLC, Soho Square Films, Ltd., Hador Film Productions, Ltd., Hador BG2 Productions Ltd., Bratz, LLC, Bratz 2 LLC, Production Services, LLC, Crystal Sky Pictures, LLC, Crystal Sky Releasing, LLC, Crystal Sky Worldwide Sales, LLC and Crystal Sky, LLC, are wholly independent of Crystal Sky Entertainment LLC, and are not "successors and permitted assigns" of Crystal Sky Entertainment LLC to either the Original Credit Agreement or the Amended and Restated Credit Agreement. Together, they will sometimes hereinafter be identified as the "Non-Related Plaintiffs" with Plaintiffs Steven Paul, individually, Crystal Sky Properties LLC, Seaside Entertainment LLC, CS Films LLC, CS Devco, LLC, SP Entertainment LLC and Doggie Dog World LLC. Through the use of improper and invalid powers of attorney with respect to these Non-Related Parties and to Plaintiffs, EYP, Cedar Lane Assets and the other Defendants, and each of them, also fraudulently and improperly transferred to EYP by virtue of the improper foreclosure sale, the rights to the following motion pictures, and



HAMRICK & EVANS, LLP

assets, set forth in Exhibit "A" to the Accommodation Security Agreement (See Exhibit "5"):

Bratz Merchandizing
Castlevania
Bratz 2
Demons
The Lady
Ghost in the Shell
Losing My Virginity
Bigger Stan
Werewolf
Maximum Ride
Soul Calibur
Lone Wolf & Cub
Capcom's Devil May Cry
Pac Man
Lost Planet

These motion pictures and assets were neither part of the Original Credit Agreement or the Amended and Restated Credit Agreement, nor were they assets of Crystal Sky Entertainment LLC, its successors and permitted assigns, nor were they assigned as additional security to any agreement with Defendants, and each of them. Furthermore, they were not assigned to Crystal Sky Entertainment LLC as additional security or collateral to any of the agreements in this complaint. (The Defendants also transferred to EYP the motion picture Bratz by virtue of the improper and fraudulent foreclosure sale. However, this film is not listed in Exhibit "5," although it is listed in Schedule A to the Transfer Statement and Notice of Assignment, Exhibit "10" to this Complaint. ) In addition, although referred to in the Amended and Restated Credit Agreement, the rights to the following motion pictures and assets were never assigned to Crystal Sky Entertainment LLC and should never have been foreclosed upon by EYP:

Devil's Chair
Opposite Day
Big Stan
Baby Geniuses 2
Karate Dog
Ghost Rider.

49. Included in the list of motion pictures and assets wrongfully taken by Defendants in the fraudulent foreclosure proceedings, and set forth in Exhibit "A" to the Accommodation and Security Agreement (Exhibit "5") are the 32 pictures listed in paragraph 38 above, which were

included in the Original Credit Agreement and which are not part of this lawsuit. However, Defendants, and each of them including EYP, Cedar Lane Assets and Cedar Lane Entertainment, improperly and fraudulently took possession of the motion pictures and assets set forth in paragraph 48, which were sold, converted and seized by EYP from their rightful owners. In fact, the rights to several of these films, including Maximum Ride, Ghost in the Shell, and Lost Planet were previously assigned to the major motion picture studios Columbia Pictures, DreamWorks and Warner Bros, respectfully. Others, such as Devil May Cry, are not controlled by any of the Plaintiffs.

50. Thus, as part of their fraudulent and improper foreclosure process and scheme, Defendants EYP, and each of them, used the limited Power of Attorney clause to steal, convert and infringe upon motion pictures, companies and entities that were not part of either the March 21, 2007 Original Credit Agreement or the December 14, 2007 Amended and Restated Credit Facility Agreement.

51. The term "Borrower" as defined on the first page of the Amended and Restated Secured Credit Facility Agreement solely refers to Crystal Sky Entertainment LLC "together with its successors and permitted assigns." With the exception of Crystal Sky Entertainment LLC, none of the Plaintiffs, entities, or the property and assets of the entities, set forth in paragraph 46, which Defendants and each of them including Defendant EYP have wrongfully taken are "successors and permitted assigns" of Crystal Sky Entertainment LLC. Instead, they are companies and entities wholly independent of Crystal Sky Entertainment LLC and are not successors and permitted assigns of Crystal Sky Entertainment LLC to the Original Credit Agreement or the Amended and Restated Credit Agreement. Thus, Defendants, and each of them, including Defendant EYP, could not sign the fraudulent Accommodation Security Agreement (Exhibit "5") on behalf of these Plaintiffs because Crystal Sky Entertainment LLC did not have the power and authority to do so. Each Non-Related Plaintiff, identified in paragraph 44, had to have issued and executed a direct power of attorney or assignment to Crystal Sky Entertainment LLC, or had to have issued and executed a separate power of attorney to Defendant EYP, or had to have executed to EYP a Joinder of Accommodating Parties and an Accommodating Security

HAMRICK & EVANS, LLP

Agreement, defining the security granted in order for the Defendants to validly foreclose upon the rights to the films and assets listed in paragraph 48. The inclusion of improper films and collateral in the foreclosure sale renders the entire foreclosure sale void.

52. On October 2, 2009, Defendant EYP sent a purported Notice of Disposition of Collateral to Steven Paul and others giving notice that on October 16, 2009, at 11:00 a.m., EYP would sell, assign and transfer at public sale to the highest bidder all rights, title and interest to numerous motion pictures, many of which belonged to Plaintiffs and were outside the scope of either the Original Credit Agreement or the Amended and Restated Credit Agreement. A true and correct copy of the Notice of Disposition of Collateral is attached as Exhibit "7" to this Complaint. On October 5, 2009, a Notice of Disposition of Collateral was published in The Hollywood Reporter, which contained the same wrongful and fraudulent information as set forth in the Notice of Disposition of Collateral which was sent to Steven Paul and the other Plaintiffs. This wrongful and fraudulent information was then transmitted to the entire entertainment community and has severely damaged the reputation of all Plaintiffs. A true and correct copy of the notice published in The Hollywood Reporter is attached hereto as Exhibit "8" to this Complaint.

53. Plaintiffs' representatives informed Defendants, and each of them, that certain of the motion pictures, entities, and assets, as set forth in paragraphs 46 and 48, they listed for sale on the Notice of Disposition of Collateral were not part of the Assignment Agreement of March 20, 2007, the March 21, 2007 Original Credit Agreement or the December 14, 2007 Amended and Restated Secured Credit Agreement. The Defendants, and each of them, refused to acknowledge this. On October 6, 2009, counsel for Defendant EYP informed Plaintiffs' representatives through email, that he conducted a "thorough due diligence" of the entities by studying (1) Crystal Sky's 3 page web site; (2) Internet Movie Data Base, listing Crystal Sky's films; (3) Internet Movie Database, listing Steven Paul's films; (4) Schedules of upcoming films, provided by Crystal Sky. Attached hereto as Exhibit "9" to this Complaint is a true and correct copy of this email correspondence. Through this "thorough due diligence," Counsel for EYP included in the fraudulent foreclosure sale any entity, related or unrelated, that had the name "crystal sky" the letters "cs," the name "Steven Paul," or any assets related thereto, rather than obtaining the



HAMRICK & EVANS, LLP

necessary documentation as requested or conducting reasonable searches to discover the ownership of each of the Non-Related Plaintiffs.

54. On October 14, 2009, the Plaintiffs attempted to stop the fraudulent sale by filing with the Superior Court of the State of California an Ex Parte Application for Order to Show Cause and Temporary Restraining Order, which was denied without prejudice. *Los Angeles Superior Court* Case Number BC 423172. This matter was dismissed without prejudice on November 12, 2009, and the matter was subsequently filed in this Court.

55. On October 16, 2009, the fraudulent Sale and Disposition of Collateral took place at the Barnes Law Firm, counsel for EYP, in Los Angeles, California, through which EYP, with the assistance of the other Defendants, and each of them, improperly sold, assigned, and transferred to EYP the rights and title to motion pictures and other assets, listed in paragraphs 46 and 48, which did not belong to EYP and Defendants, and each of them, but which belong to Plaintiffs. Upon completion of the fraudulent Sale and Disposition of Collateral, Defendant EYP issued a Transfer Statement and Notice of Assignment through which EYP stated that it acquired the rights to the inventory of films that were sold during the Sale and Disposition of Collateral. This was set forth in Schedule A to Transfer Statement and Notice of Assignment. The Transfer Statement and Notice of Assignment were signed on October 20, 2009, by Defendant Andrew Dean, purportedly as Director, on behalf of EYP, as assignor, and EYP as buyer. Attached hereto as Exhibit "10" is a true and correct copy of the Transfer Statement and Notice of Assignment.

56. Plaintiffs are informed and believe and based upon this information and belief allege, that subsequent to the October 16, 2009 fraudulent foreclosure sale, Defendants, and each of them filed various notices of ownership to the films set forth in paragraph 48, and as further stated in Exhibit 10, including filing notices in the United States Copyright Office claiming ownership of these films. Defendants also assert distribution rights to these films. In addition, the Defendants have sent notices to licensors, distributors, laboratories, claiming ownership of said assets. The Defendants have also sent notices of ownership to banks, guilds, and unions, and interfered with the contractual relationships with banks and lenders, guilds and unions of



HAMRICK & EVANS, LLP

Plaintiffs, and each of them, including Plaintiff Steven Paul individually. Defendants and each of them further prevented Plaintiffs and each of them, including Plaintiff Steven Paul individually, from obtaining access to the material of the motion pictures wrongfully converted by Defendants and each of them, thus Plaintiffs, and each of them, including Plaintiff Steven Paul cannot market, sell, license or exploit the motion pictures. These activities have led to defaults in loan agreements and severe damages to Plaintiffs and each of them, including Plaintiff Steven Paul individually. The Defendants have also disrupted future motion pictures and other projects of Plaintiff Steven Paul individually and the Non-Related Plaintiffs by making it impossible for them to obtain financing. The Plaintiffs, including Plaintiff Steven Paul individually, cannot fulfill agreements, and cannot finance and re-finance motion pictures. The chains of titles on several motion pictures, unrelated to the loan transaction, are clouded by the actions of Defendants, and each of them. In addition, Plaintiffs, and each of them, including Plaintiff Steven Paul, are threatened with multiple million dollar lawsuits by grantees of rights and licensees of films which were fraudulently and improperly acquired by Defendants and each of them, including Defendant EYP. The lender ICB Entertainment Finance, ("ICB") identified in paragraph 41, has filed suit in the Superior Court of the State of California against Plaintiff Steven Paul, individually regarding the motion picture Opposite Day, to which Defendant EYP has a second position to ICB, but has improperly taken possession of the motion picture through the fraudulent foreclosure sale. The actions of Defendant EYP, and the other Defendants, and each of them, have destroyed the ability of Plaintiff Steven Paul, individually, and Plaintiff Opposite Day Distribution LLC, to market, exhibit, exploit and distribute the motion picture Opposite Day. This has greatly exacerbated the potential exposure Plaintiff Steven Paul, individually, may have against ICB. These improper and illegal activities severely damaged Plaintiffs' reputation within the entertainment community, including the reputation of Plaintiff Steven Paul, individually, with talent agents, banks, studios and artists. The Defendants' actions devastated Mr. Paul's family interests and his personal reputation.

///

///

///

**FIRST CLAIM FOR RELIEF**

**Copyright Infringement (U.S.C. Sections 101*et seq.)***

**(Plaintiffs Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC Against Defendant EYP)**

57. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 56, inclusive.

58. The following motion pictures, Devil's Chair, Opposite Day, Big Stan, Baby Geniuses II, Karate Dog, and Bratz, owned by Plaintiffs, contain material wholly original with Plaintiffs that is copyrightable subject matter under the laws of the United States. Plaintiff Hador Film Productions, Ltd. complied in all respects with the copyright laws, owns the motion picture Devil's Chair and secured the exclusive rights and privileges in the copyright of this motion picture. Plaintiff Opposite Day Distribution LLC complied in all respects with the copyright laws, owns the motion picture Opposite Day, and secured the exclusive rights and privileges in the copyright of this motion picture. Plaintiff Big Stan Productions, LLC complied in all respects with the copyright laws, owns the motion picture Big Stan, and secured the exclusive rights and privileges in the copyright of this motion picture. Plaintiff Baby Geniuses 2, LLC complied in all respects with the copyright laws, owns the motion picture Baby Geniuses 2, and secured the exclusive copyright of this motion picture. Plaintiff Doggie Dog World, LLC complied in all respects with the copyright laws, owns the motion picture Karate Dog, and secured the exclusive copyright of this motion picture. Plaintiff Bratz LLC complied in all respects with the copyright laws, owns the motion picture Bratz, and secured the exclusive copyright of this motion picture.

59. Plaintiff Hador Film Productions, Ltd. is the exclusive owner of the copyright in the motion picture Devil's Chair. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Hador Film Productions Ltd.'s exclusive rights to own, distribute and reproduce the motion picture Devil's Chair, by fraudulently and improperly taking, distributing and selling Devil's Chair and representing to the public that Devil's Chair belongs to Defendants, and each of them. In addition Defendants have

HAMRICK & EVANS, LLP

slandered the title of Devil's Chair, and have prevented Plaintiff Hador Films Productions Ltd., the rightful owner of Devil's Chair, the right to obtain access to and possession of the prints of Devil's Chair and other film material of Devil's Chair and distribute and sell, license and deliver Devil's Chair to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

60. Plaintiff Opposite Day Distribution LLC. is the exclusive owner of the copyright in the motion picture Opposite Day. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Opposite Day Distribution LLC's exclusive rights to own, distribute and reproduce the motion picture Opposite Day, by fraudulently and improperly taking, distributing and selling this motion picture and representing to the public that Opposite Day belongs to Defendants, and each of them. In addition Defendants have slandered the title of Opposite Day, and have prevented Plaintiff Opposite Day Distribution LLC, the rightful owner of Opposite Day, the right to obtain access to and possession of the prints of Opposite Day and other film material of Opposite Day and distribute and sell, license and deliver Opposite Day to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

61. Plaintiff Big Stan Productions LLC. is the exclusive owner of the copyright in the motion picture Big Stan. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Big Stan Productions LLC's exclusive rights to own, distribute and reproduce the motion picture Big Stan, by fraudulently and improperly taking, distributing and selling this motion picture and representing to the public that Big Stan belongs to Defendants, and each of them. In addition Defendants have slandered the title of Big Stan, and have prevented Plaintiff Big Stan Productions LLC, the rightful owner of Big Stan, the right to obtain access to and possession of the prints of Big Stan and other film material of Big Stan and distribute and sell, license and deliver Big Stan to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

///

HAMRICK & EVANS, LLP

62. Plaintiff Baby Geniuses 2, LLC is the exclusive owner of the copyright in the motion picture Baby Geniuses 2. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Baby Geniuses 2 LLC's exclusive rights to own, distribute and reproduce the motion picture Baby Geniuses 2, by fraudulently and improperly taking, distributing and selling this motion picture and representing to the public that Baby Geniuses 2 belongs to Defendants, and each of them. In addition Defendants have slandered the title of Baby Geniuses 2, and have prevented Plaintiff Baby Geniuses 2 LLC, the rightful owner of Baby Geniuses 2, the right to obtain access to and possession of the prints of Baby Geniuses 2 and other film material of Baby Geniuses 2 and distribute and sell, license and deliver Baby Geniuses 2 to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

63. Plaintiff Doggie Dog World, LLC is the exclusive owner of the copyright in the motion picture Karate Dog. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Doggie Dog World, LLC's exclusive rights to own, distribute and reproduce the motion picture Karate Dog, by fraudulently and improperly taking, distributing and selling this motion picture and representing to the public that Karate Dog belongs to Defendants, and each of them. In addition Defendants have slandered the title of Karate Dog, and have prevented Plaintiff Doggie Dog World, LLC, the rightful owner of Karate Dog, the right to obtain access to and possession of the prints of Karate Dog and other film material of Karate Dog and distribute and sell, license and deliver Karate Dog to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

64. Plaintiff Bratz, LLC is the exclusive owner of the copyright in the motion picture Bratz. Through their fraudulent activities, EYP and the other Defendants have willfully infringed, and continue to infringe, Plaintiff Bratz LLC's exclusive rights to own, distribute and reproduce the motion picture Bratz, by fraudulently and improperly taking, distributing and selling this motion picture and representing to the public that Bratz belongs to Defendants, and each of them.



HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

In addition Defendants have slandered the title of Bratz, and have prevented Plaintiff Bratz LLC, the rightful owner of Bratz, the right to obtain access to and possession of the prints of Bratz and other film material of Bratz and distribute and sell, license and deliver Bratz to existing licensees and various distributors worldwide who have requested screening of the Picture and interest in acquiring the Picture for their respective territories.

65. In connection with the matters and things alleged herein, Defendants, and each of them, have acted intentionally, with full knowledge of the rights of Plaintiffs' Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC and have been guilty of oppression and malice, and these Plaintiffs are therefore entitled to exemplary damages in an amount to be proved at trial.

66. Defendants' infringements are continuing and threaten to irreparably harm Plaintiffs' copyright interests, as well as their reputation in the entertainment industry. Accordingly Plaintiffs Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC are entitled to an injunction barring Defendant EYP and the other Defendants, and their agents, employees, and all persons acting in concert with them, from, among other things: (i) claiming or representing to anyone that they have an ownership interest in or license to exploit the motion pictures set forth above; (ii) distributing, exploiting, marketing, advertising, selling promoting, licensing, or causing or authorizing the sale, distribution, exploitation, licensing, marketing, advertising, or promotion of the motion pictures set forth above; (iii) obtaining and retaining physical possession the motion pictures set forth above; and (iv) preventing Plaintiffs from the right to gain access to the film elements and material by wrongfully asserting exclusive rights to all of Plaintiffs' film elements in the various film laboratories where such film elements are kept.

67. Plaintiffs Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC have no adequate remedy at law to redress Defendants' continuing wrongful conduct.

///

///

68. As a direct and proximate result of Defendants' repeated infringements of Plaintiffs' copyright interests, Plaintiffs Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC are entitled to recover from Defendants, and each of them, the damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants acts of infringement alleged above. At present the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiffs. However, upon information and belief, Plaintiffs Hador Film Productions, Ltd., Opposite Day Distribution LLC, Big Stan Productions LLC, Baby Geniuses 2, LLC, Doggie Dog World, LLC, and Bratz, LLC allege damages based upon this claim for relief in excess of Two Hundred Million Dollars ($200,000,000.00) and statutory damages according to proof.

**SECOND CLAIM FOR RELIEF**

**Fraud**

**(By all Plaintiffs Against all Defendants)**

69. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 68, inclusive.

70. Defendant EYP entered into the Original Credit Agreement and the Amended and Restated Credit Agreement with Plaintiff Crystal Sky Entertainment LLC and set forth within the agreements the motion pictures and entities which were to be used as collateral for the transactions. The Defendants, and each of them, entered into a conspiracy to defraud the Plaintiffs, as the representations which EYP and the individual Defendants made to Crystal Sky Entertainment LLC and the Plaintiffs to enter into the transactions were utterly false in that Defendant EYP and the other Defendants, and each of them, had no intention of negotiating in good faith with Plaintiffs and Plaintiff Crystal Sky Entertainment LLC. Instead of limiting itself to the collateral it negotiated with Plaintiffs, in furtherance of the conspiracy, Defendant EYP and the other Defendants, and each of them, improperly and fraudulently used the limited Power of Attorney clause to declare itself "attorney-in-fact" and improperly take from Plaintiffs the motion pictures and other entities that belonged to Plaintiffs and not EYP, and that were never part of



HAMRICK & EVANS, LLP

either the Original Credit Agreement or the Amended and Restated Credit Agreement.

71. Plaintiffs are informed and believe and thereon allege that in furtherance of the conspiracy, when EYP and the other Defendants, and each of them, made the representations to enter into the Original Credit Agreement and the Amended and Restated Credit Agreement, they knew of the falsity of such representations and/or had no reasonable grounds in believing such representations to be true, and made such representations with the intent to defraud Plaintiffs and induce Plaintiff Crystal Sky Entertainment LLC to enter into the Original Credit Agreement and the Amended and Restated Credit Agreement.

72. In reasonable and justifiable reliance on the representations of EYP and the other Defendants, and each of them, and ignorant of their falsity, Plaintiff Crystal Sky Entertainment LLC was induced to enter into the Original Credit Agreement and the Amended and Restated Credit Agreement. Had Plaintiffs known that the above representations by Defendants, and each of them, were not truthful, or were made with the intention of taking from Plaintiffs the entirety of their motion picture inventory, and all of their entities and assets, Plaintiff Crystal Sky Entertainment LLC would not have entered into either the Original Credit Agreement or the Amended and Restated Credit Agreement.

73. As a result of the misrepresentations described above, Plaintiffs, including Plaintiff Steven Paul individually, have sustained damages in the form of loss profits and gains, including the inability to market, distribute, and sell motion pictures, damages and advantages that at present cannot be fully ascertained by Plaintiffs. In addition, Plaintiff Steven Paul has been damaged through the filing of a lawsuit by ICB Entertainment Finance substantially caused by the actions of Defendants, and each of them, regarding the motion picture Opposite Day. Upon information and belief, Plaintiffs, including Plaintiff Steven Paul individually, allege damages based upon this claim for relief in excess of Two Hundred Million Dollars ($200,000,000.00) or such other sums as may be proven at time of trial. Plaintiffs, including Plaintiff Steven Paul individually, further allege that Defendants, and each of them, were guilty of oppression, fraud and malice as defined by *California Civil Code* Section 3294 when they made the above referenced representations and that Plaintiffs, including Plaintiff Steven Paul individually, should recover punitive damages in an

HAMRICK & EVANS, LLP

amount sufficient to punish and deter Defendants from repeating such conduct in the future.

**THIRD CLAIM FOR RELIEF**

**Conversion**

**(By all Plaintiffs Against all Defendants)**

74. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 73.

75. At all times herein mentioned, plaintiffs were, and still are, the owners and rights holders of the following motion pictures and assets, and were and still are entitled to their possession:

Bratz Merchandizing
Castlevania
Bratz 2
Bratz
Demons
The Lady
Ghost in the Shell
Losing My Virginity
Bigger Stan
Werewolf
Maximum Ride
Soul Calibur
Lone Wolf & Cub
Capcom's Devil May Cry
Pac Man
Lost Planet
Devils Chair
Opposite Day
Big Stan
Baby Geniuses 2
Karate Dog

76. On or about October 16, 2009, Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to convert the property described above from the possession of Plaintiffs, and converted the same to their own use through the fraudulent and improper foreclosure scheme and auction. Plaintiffs' representatives demanded that Defendants, and each of them, return the above referenced motion pictures and assets, but Defendants failed

HAMRICK & EVANS, LLP

and refused, and continue to fail and refuse, to return the motions pictures and assets to Plaintiffs in furtherance of their conspiracy to convert Plaintiffs' property, including the property of Plaintiff Steven Paul, individually.

77. As a proximate result of the conversion pursuant to the conspiracy herein alleged, by Defendants, and each of them, Plaintiffs, including Plaintiff Steven Paul, allege damages which are the natural, reasonable, and proximate result of the conversion, in the sum of Two Hundred Million Dollars ($200,000,000.00) or such other sums as may be proven at time of trial.

78. The Defendants' acts alleged above were willful, wanton, malicious, oppressive, and were undertaken with the intent to defraud Plaintiffs, including Plaintiff Steven Paul. These acts justify the awarding of exemplary and punitive damages.

**FOURTH CLAIM FOR RELIEF**

**Intentional Interference with Contract**

**(By all Plaintiffs Against all Defendants)**

79. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 78.

80. Plaintiffs have valid existing agreements with Columbia Pictures, DreamWorks Pictures and Warner Bros. whereby the rights to certain motion pictures including Maximum Ride, Ghost in the Shell and Lost Planet respectively were and have been assigned and granted to these studios.

81. At all relevant times herein, Defendants, and each of them, have been aware of these valid existing agreements with Columbia Pictures, DreamWorks Pictures and Warner Bros. at the time that they interfered with them.

82. Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to damage Plaintiffs, including Plaintiff Steven Paul, by depriving them of the benefits of the contracts with Columbia Pictures, DreamWorks Pictures and Warner Bros., and have acted without privilege or justification to cause a disruption of Plaintiffs' valid existing

agreements with Columbia Pictures, DreamWorks Pictures and Warner Bros. by selling, assigning and transferring at a public sale held on October 16, 2009, all rights, title and interest with respect to certain motion pictures which belong to Plaintiffs and are outside the scope of the Original Credit Agreement, including Maximum Ride, Ghost in the Shell and Lost Planet. In addition, pursuant to such conspiracy, and in furtherance thereof, Defendants disrupted the relationship between Plaintiffs, including Plaintiff Steven Paul individually, and ICB Entertainment Finance regarding the film Opposite Day. As set forth in paragraph 41, above, under Schedule 4.6(a) of the Amended and Restated Credit Agreement, EYP understood that it was to take second position to the senior lender, ICB Entertainment Finance regarding the film Opposite Day. ICB Entertainment Finance, which has a superior position to that of EYP regarding the film Opposite Day. ICB Entertainment Finance has filed suit against Plaintiff Steven Paul individually, substantially because of the actions taken by Defendants, and each of them, in conspiring and converting the motion picture Opposite Day.

83. As a direct and proximate result of Defendants' interference and pursuit of the conspiracy herein alleged, Plaintiffs have been damaged by the loss of the value of the motion pictures Maximum Ride, Ghost in the Shell and Lost Planet, which value or an equivalent will need to be tendered to Columbia Pictures, DreamWorks Pictures and Warner Bros. Furthermore, Plaintiffs have been damaged through the loss of the value of the motion picture Opposite Day, and Plaintiff Steven Paul individually, has been damaged through the actions taken by ICB Entertainment Finance as a direct result of the conspiracy herein alleged.

84. As a direct and proximate result of Defendants' conspiracy and breaches, Plaintiffs have been harmed in an amount to be proved with certainty at trial and which exceeds the jurisdictional minimum of this Court and includes lost revenue, and increasing interest expenses, as well as harm to Plaintiffs' reputation in the business community, including the reputation of Plaintiff Steven Paul individually.

85. In doing the acts alleged herein, Defendants are guilty of oppression, fraud, or malice, and as to the conduct of Defendants' employees, Defendants had advance knowledge and conscious disregard, authorization, or ratification of those acts and/or those acts were made by an

officer, director or managing agent of Defendants, and each of them.

**FIFTH CLAIM FOR RELIEF**

**Intentional Interference with Business Expectancy**

**(By all Plaintiffs Against all Defendants)**

86. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 85.

87. A cause of action exists for intentional interference with prospective business relationship where the Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to disrupt or divert the business relationships or expectancy of Plaintiffs by improper methods which fall outside the boundaries of fair competition.

88. There existed a reasonably certain valid business expectancy between Plaintiffs, including Plaintiff Steven Paul individually, on the one hand and the parties to various loan transactions and personal guarantees, the grantees of rights and licensees of films, talent agents, banks, studios and artists, on the other. For example, ICB Entertainment Finance, which has a superior position to that of EYP regarding the film Opposite Day, has loaned funds to Plaintiffs necessary for completion of that film.

89. Pursuant to such conspiracy, and in furtherance thereof, Defendants wrongfully interfered with Plaintiffs' valid business expectancy, including that of Plaintiff Steven Paul individually, when they falsified various security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Disposition of Collateral was issued; included wholly unrelated entities within the Notice of Disposition of Collateral, the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, and improperly and illegally purportedly sold, transferred and assigned motion pictures and other assets Defendants did not own, but which Plaintiffs do own, and which were not part of the Original Credit Agreement. As a proximate result of Defendants' wrongful acts, Plaintiffs, including Plaintiff Steven Paul individually, have not been able to fulfill agreements, finance and re-finance motion pictures and produce film projects.



HAMRICK & EVANS, LLP

90. As such, Plaintiffs, including Plaintiff Steven Paul individually, have been damaged in an amount to be proved with certainty at trial and which exceeds the jurisdictional minimum of this Court.

91. In doing the acts alleged herein, Defendants are guilty of oppression, fraud, or malice, and as to the conduct of Defendants' employees, Defendants had advance knowledge and conscious disregard, authorization, or ratification of those acts and/or those acts were made by an officer, director or managing agent of Defendants, and each of them.

**SIXTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty**

**(Plaintiff Crystal Sky Entertainment LLC Against all Defendants.)**

92. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 91, inclusive.

93. On or about May 4, 2009, Defendant EYP, and Defendants and each of them, created an attorney-in-fact relationship with Plaintiff Crystal Sky Entertainment LLC through its employment of the limited Power of Attorney clause in Section 11.3 of the Amended and Restated Credit Agreement, by executing the Accommodation Security Agreement, (Exhibit "6" to this Complaint), and by executing the Laboratory Elements Pledge and Security Agreement, (Exhibit "7" to this Complaint.)

94. By virtue of the attorney-in-fact relationship that existed between Defendant EYP, and Defendants and each of them, and Plaintiff Crystal Sky Entertainment LLC, Defendant EYP and Defendants and each of them, owed to Plaintiff Crystal Sky Entertainment LLC a fiduciary duty, and by virtue of Plaintiff having placed confidence in the fidelity and integrity of Defendants, and each of them, by entering into the special limited Power of Attorney relationship, a fiduciary relationship existed at all times herein mentioned between Plaintiff Crystal Sky Entertainment LLC and Defendant EYP and Defendants and each of them.

95. In violation of the relationship of trust and confidence, Defendant EYP and Defendants and each of them, abused the trust and confidence of Plaintiff Crystal Sky Entertainment LLC by executing powers of attorney as to companies over which Defendant EYP



HAMRICK & EVANS, LLP

and Defendants and each of them have no power or in which they have no interest including, but not limited to, CRYSTAL SKY PROPERTIES, LLC; SEASIDE ENTERTAINMENT, LLC; CS FILMS, LLC; CS DEVCO, LLC; BRATZ LLC; BRATZ 2, LLC; SP ENTERTAINMENT, LLC; BIG STAN PRODUCTIONS LLC; CRYSTAL SKY PICTURES LLC; CRYSTAL SKY LLC; CRYSTAL SKY WORLDWIDE SALES LLC; OPPOSITE DAY DISTRIBUTION LLC; PRODUCTION SERVICES LLC; BABY GENIUSES 2, LLC; CRYSTAL SKY RELEASING LLC; SOHO SQUARE FILMS, LTD.; HADOR FILM PRODUCTIONS LTD.; HADOR BG2 PRODUCTIONS LTD. and DOGGIE DOG WORLD LLC, and assigning the assets of these companies through fraudulent means to Plaintiff Crystal Sky Entertainment LLC, and clouding the chains of titles over motion pictures and assets that are owned and/or controlled by companies over which Defendant EYP and Defendants and each of them have no power or in which they have no interest including, but not limited to:

Devil's Chair
Opposite Day
Big Stan
Bigger Stan
Baby Geniuses II
Karate Dog
Bratz
Castlevania
Bratz 2
Demons
The Lady
Ghost in the Shell
Losing My Virginity
Werewolf
Maximum Ride
Soul Calibur
Lone Wolf & Cub
Capcom's Devil May Cry
Pac Man
Lost Planet
Ghost Rider.

96. Furthermore, Defendant EYP, and Defendants and each of them, abused the trust and confidence of Plaintiff Crystal Sky Entertainment LLC by transferring these companies and entities listed above, through fraudulent instruments, into Plaintiff Crystal Sky Entertainment



HAMRICK & EVANS, LLP

LLC, and then placing said properties into an improper foreclosure and auction. The execution and misuse of the special Power of Attorney applies to all Defendants, and each of them, as they applied and executed upon the Power of Attorney by adding the Non-Related Plaintiffs under it without cause or documentation, and then acted upon the Power of Attorney powers by creating and executing the Accommodation Security Agreement, the Laboratory Elements Pledge and Security Agreement, by foreclosing upon the entities and motion pictures set forth above, and by infringing upon the copyrights of the films set forth in the First Claim for Relief. Each act by Defendants, and each of them, followed the improper and fraudulent use of the Power of Attorney clause set forth in Section 11.3 of the Amended and Restated Credit Agreement.

97. As a proximate result of said breaches of fiduciary duties to Plaintiff Crystal Sky Entertainment LLC, Plaintiff Crystal Sky Entertainment LLC has sustained damages according to proof at trial. Plaintiff Crystal Sky Entertainment LLC further alleges that Defendant EYP and Defendants and each of them, are guilty of oppression, fraud and malice as defined by California Civil Code Section 3294 by doing the acts herein alleged, and that Plaintiff Crystal Sky Entertainment LLC should recover punitive damages in an amount sufficient to punish and deter Defendant EYP from repeating such conduct in the future.

**SEVENTH CLAIM FOR RELIEF**

**Recovery of Usurious Interest**

**(By All Plaintiffs Except Crystal Sky Entertainment LLC**

**Against Defendants EYP, Cedar Lane Assets and Cedar Lane Entertainment)**

98. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 97, inclusive.

99. On December 14, 2007, Crystal Sky Entertainment LLC and EYP entered into an Amended and Restated Secured Credit Facility Agreement (the "Amended and Restated Credit Agreement") in the amount of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000) to primarily pay for interest and fees to Defendants Cedar Lane Assets, Cedar Lane Entertainment and EYP. Through the improper and fraudulent use of the Power of Attorney clause set forth in Section 11.3 of the Amended and Restated Credit Agreement, the Plaintiffs to this Claim for



HAMRICK & EVANS, LLP

Relief ("the Non-Related Plaintiffs" as identified in paragraph 48 above) were made additional Debtors to the loan by virtue of the Accommodation Security Agreement (Exhibit "5"), which Defendants, and each of them, executed through the fraudulent use of the Power of Attorney. The interest rate of 18% set forth in the Amended and Restated Credit Agreement, and charged to the Non-Related Plaintiffs is usurious and violates the California Finance Lenders Law (*Finance Code* §§ 22000, et seq.) which regulates personal property brokering and consumer and commercial loans, and requires that parties engaged in making such loans be licensed under *Finance Code* § 22100. Upon information and belief, the Non-Related Plaintiffs allege that Defendants, and each of them, including Defendant EYP, at all times herein alleged, were not licensed to engage in the business of a finance lender or broker in the State of California, and engaged in usurious activities which violate the California Constitution, Article XV, and the California Finance Lenders Law. This interest payment was usurious and violates the California Finance Lenders Law (*Finance Code* §§ 22000, et seq.) which regulates personal property brokering and consumer and commercial loans, and requires that parties engaged in making such loans be licensed under the statute. *Finance Code* § 22100.

100. This interest payment, of 18% was in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and the Non-Related Plaintiffs are entitled to recover treble the amount paid in interest pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970.

101. An actual controversy has arisen and now exists between the Non-Related Plaintiffs and Defendants EYP and Cedar Lane Assets and Cedar Lane Entertainment concerning their respective rights and duties in that the Non-Related Plaintiffs, including Plaintiff Steven Paul individually, contend that the interest payment set forth in the Amended and Restated Credit Agreement is usurious and should be declared null and void, whereas, Defendants, and each of them, dispute this contention.

102. The Non-Related Plaintiffs desire a judicial determination of their rights and duties, and a declaration that the interest payment provision in the Amended and Restated Credit Agreement of December 14, 2007, is null and void, pursuant to the California Constitution, Article



HAMRICK & EVANS, LLP

XV, Section 1 and Section 2 of the Statutes of 1919, page lxxxiii, and that the Non-Related Plaintiffs, including Plaintiff Steven Paul individually, should recover treble the amount paid in interest, pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970.

## EIGHTH CLAIM FOR RELIEF

**Injunctive Relief**

**(By all Plaintiffs Against all Defendants)**

103. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 102, inclusive.

104. By virtue of the allegations stated above and coupled with the fact that Plaintiffs have suffered irreparable injury in that Defendants have falsified various security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale and Disposition of Collateral was issued, included wholly unrelated entities within the Notice of Sale and Disposition of Collateral, the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, and improperly and illegally purportedly sold, transferred and assigned motion pictures and other assets Defendants did not own, but which Plaintiffs do own, and which were not part of either the Original Credit Agreement or the Amended and Restated Credit Agreement, great and irreparable damage has resulted to Plaintiffs, including Plaintiff Steven Paul individually, including, but not limited to, the loss of motion picture properties and elements at public sale which has severely damaged Plaintiffs, including Plaintiff Steven Paul individually, through the loss of substantial assets, investments and revenue.

105. Unless enjoined and restrained by this Court, Plaintiffs, including Plaintiff Steven Paul individually, will suffer irreparable damages as alleged in this Complaint.

106. Plaintiffs, including Plaintiff Steven Paul individually, have no adequate remedy at law and, unless Defendants are enjoined and restrained, Defendants' actions will cause great and irreparable injury and damage to Plaintiffs, including Plaintiff Steven Paul individually, as a result of enforcement of Defendants' purported security interests and the October 16, 2009, sale of



HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

motion picture properties and elements.

107. For all the foregoing reasons and in further relief as requested herein, Plaintiffs seek a preliminary and permanent injunction restraining and enjoining Defendants, and each of them, their agents, parties, subsidiaries, officers, employees and all those acting in concert with them, both directly and indirectly, from the following acts:

a. Refusing to release purported security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale and Disposition of Collateral and Transfer Statement and Notice of Assignment were issued;

b. For an Order compelling Defendants, and each of them to transfer and assign to Plaintiffs any or all rights, title and interest with respect to the motion pictures identified in the Notice of Disposition of Collateral and Transfer Statement and Notice of Assignment and not part of the Original Credit Agreement;

c. For an Order compelling Defendants, and each of them, to release any and all purported security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale and Disposition of Collateral and Transfer Statement and Notice of Assignment were issued;

d. For an Order compelling Defendants, and each of them to transfer and assign to Plaintiffs, and each of them including Plaintiff Steven Paul individually, any or all rights, title and interest with respect to the following motions pictures and assets identified in the Transfer Statement and Notice of Assignment:

Bratz Merchandizing
Castlevania
Bratz 2
Bratz
Demons
The Lady
Ghost in the Shell
Losing My Virginity
Big Stan

Bigger Stan
Werewolf
Maximum Ride
Soul Calibur
Lone Wolf & Cub
Capcom's Devil May Cry
Pac Man
Lost Planet
Devil's Chair
Opposite Day
Baby Geniuses 2
Karate Dog
Ghost Rider.

## NINTH CLAIM FOR RELIEF

**Declaratory Relief**

**(By all Plaintiffs Except Crystal Sky Entertainment LLC Against all Defendants)**

108. Plaintiffs hereby incorporate by reference as though fully set forth herein paragraphs 1 through 107, inclusive.

109. An actual dispute and controversy has arisen between the Plaintiffs to this Claim for Relief ("the Non-Related Plaintiffs" as identified in paragraph 48 above, including Plaintiff Steven Paul individually) on the one hand and Defendants on the other, concerning their rights and duties under the Original Credit Agreement, the Amended and Restated Credit Agreement, the purported security interests claimed by Defendants, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Disposition of Collateral was issued, the Notice of Disposition of Collateral itself, and the Transfer Statement and Notice of Assignment as follows:

a. Plaintiffs contend and Defendants, and each of them, deny that the Powers of Attorney executed by Defendants and each of them are invalid as there was no Assignment from the Non-Related Plaintiffs to Crystal Sky Entertainment LLC; the Non-Related Plaintiffs did not sign or execute a special Power of Attorney to Crystal Sky Entertainment LLC; the Non-Related Plaintiffs did not sign or execute a "Joinder as 'Accommodating Parties;'" The Non-Related Plaintiffs did not sign or execute a special Power of Attorney to Defendant EYP; the Non-Related Plaintiffs did not execute and sign



HAMRICK & EVANS, LLP

"Laboratories Access Letters;" the Non-Related Plaintiffs did not sign or execute "Accommodation Security Interests" to and in favor of Defendant EYP and the other Defendants, and each of them. Thus, Plaintiffs contend that the Powers of Attorney clause set forth in the Original Credit Agreement and the Amended and Restated Credit Agreement should be declared invalid and the transfer of rights be declared invalid; the Plaintiffs contend that all of Defendants' rights to the motion pictures and assets set forth below with Bratz Merchandizing, and the motion pictures and assets set forth in the Amended and Restated Credit Agreement should be declared invalid; the Plaintiffs contend that the Accommodation Security Agreement be declared null and void; the Plaintiffs contend that the Laboratory Elements Pledge and Security Agreement be declared invalid; the Plaintiffs contend the Foreclosure sale which took place on or about October 16, 2009 be declared invalid and all the films and assets improperly sold at said Foreclosure sale be declared the property of and returned to the possession of their lawful owners, the Plaintiffs herein.

b. Plaintiffs contend and Defendants, and each of them, deny, that Defendants, by executing Powers of Attorney as to companies over which they have no power or in which they have no interest including, but not limited to, SEASIDE ENTERTAINMENT, LLC, a California Limited Liability Company; CS FILMS, LLC, a California Limited Liability Company; CS DEVCO, LLC, a California Limited Liability Company; SP ENTERTAINMENT, LLC, BIG STAN PRODUCTIONS LLC; CRYSTAL SKY PICTURES LLC; CRYSTAL SKY PROPERTIES LLC; CRYSTAL SKY LLC; CRYSTAL SKY WORLDWIDE SALES LLC; OPPOSITE DAY DISTRIBUTION LLC; PRODUCTION SERVICES LLC; OPPOSITE DAY LLC; DOGGIE DOG WORLD LLC; BABY GENIUSES II LLC; BRATZ LLC; BRATZ, LLC; have clouded the chains of titles over motion pictures that are owned by companies over which Defendants have no power or in which Defendants have no interest including, but not limited to:

Devil's Chair
Opposite Day
Big Stan
Bigger Stan



HAMRICK & EVANS, LLP

Baby Geniuses II
Karate Dog
Bratz
Castlevania
Bratz 2
Demons
The Lady
Ghost in the Shell
Losing My Virginity
Werewolf
Maximum Ride
Soul Calibur
Lone Wolf & Cub
Capcom's Devil May Cry
Pac Man
Lost Planet
Ghost Rider.

c. Plaintiffs, including Plaintiff Steven Paul individually, contend and Defendants, and each of them, deny, that Defendants have acted without privilege or justification to cause a disruption of Plaintiffs' valid existing agreements with Columbia Pictures, DreamWorks Pictures, Warner Bros. and ICB by improperly and illegally purportedly selling, transferring and assigning motion pictures and other assets Defendants did not own, but which Plaintiffs do own, including Maximum Ride, Ghost in the Shell, Lost Planet, Opposite Day, and all of the motion pictures set forth above.

d. Plaintiffs, including Plaintiff Steven Paul individually, contend and Defendants, and each of them, deny, that Defendants wrongfully interfered with Plaintiffs' valid business expectancy when they falsified various security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale, the Disposition of Collateral, and the Transfer Statement and Notice of Assignment were issued; included wholly unrelated entities within the Notice of Sale and Disposition of Collateral, the Transfer Statement and Notice of Assignment, the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement; including Maximum Ride, Ghost in the Shell, Lost Planet, Opposite Day and Castlevania, and all of the motion



HAMRICK & EVANS, LLP

pictures set forth above; and improperly and illegally purportedly sold, transferred and assigned to themselves, motion pictures and other assets Defendants did not own, but which Plaintiffs do own, and which were not part of the Original Credit Agreement.

e. The Non-Related Plaintiffs, including Plaintiff Steven Paul individually, contend and Defendants deny, and each of them that the interest payment, of 18% Defendant EYP charged to the Non-Related Plaintiffs through the execution of the Accommodation Security Agreement in the Original Credit Agreement and the Amended and Restated Credit Agreement was in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and the Non-Related Plaintiffs are entitled to recover treble the amount paid in interest pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970. Furthermore, the Non-Related Plaintiffs contend that the interest payment set forth in the Original Credit Agreement and the Amended and Restated Credit Agreement is usurious and should be declared null and void.

110. Plaintiffs, including Plaintiff Steven Paul individually, seek a declaration of their rights and duties and the Lender's rights and duties under the Original Credit Agreement and the Amended and Restated Credit Agreement, the purported security interests claimed by Defendants, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale and Disposition of Collateral was issued, the Notice of Disposition of Collateral itself, and the Transfer Statement and Notice of Assignment.

111. A judicial declaration is necessary and appropriate at this time and under the circumstances, especially in light Defendants' contention that certain security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, form a legitimate basis upon which to have issued a Notice of Sale and Disposition of Collateral and that certain entities that Plaintiffs maintain are wholly unrelated entities are properly within the Notice of Disposition of Collateral, the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement; and Plaintiffs, including Plaintiff



HAMRICK & EVANS, LLP

Steven Paul individually, contend that Defendants have improperly and illegally sold, transferred and assigned to third parties motion pictures and other assets Defendants did not own, but which Plaintiffs do own, and which were not part of the Original Credit Agreement.

112. Absent such judicial declaration at this time, Plaintiffs, including Plaintiff Steven Paul individually, will suffer incalculable damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**FIRST CLAIM FOR RELIEF:**

1. The issuance of an injunction barring Defendants, and their agents, employees and representatives, from (i) claiming or representing to anyone that they have any ownership interest in or license to exploit the following motion pictures:

Devil's Chair
Opposite Day
Big Stan
Baby Geniuses 2 (aka Baby Geniuses II)
Karate Dog
Bratz,

(ii) further distributing, exploiting, marketing, advertising, selling, promoting, licensing, or causing or authorizing the sale, distribution, exploitation, licensing, marketing, advertising, or promotion of the films listed above; (iii) obtaining or retaining physical possession of the films listed above and all of their component elements.

2. An award of Plaintiffs' actual damages and Defendants' profits the damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants acts of infringement. Upon information and belief, Plaintiffs allege damages based upon this claim for relief in excess of Two Hundred Million Dollars ($200,000,000.00), according to proof at trial, and/or statutory damages at Plaintiffs' election;

HAMRICK & EVANS, LLP

HAMRICK & EVANS, LLP

**SECOND CLAIM FOR RELIEF**

3. For compensatory damages in the amount of Two Hundred Million Dollars, ($200, 000,00.00) to Plaintiffs, including Plaintiff Steven Paul individually, or according to proof;

4. For interest on such compensatory damages at the legal rate;

5. For punitive damages, to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof at trial;

**THIRD CLAIM FOR RELIEF**

6. For compensatory damages in the amount of Two Hundred Million Dollars, ($200,000,00.00) to Plaintiffs, including Plaintiff Steven Paul individually, or according to proof;

7. For interest on such compensatory damages at the legal rate;

8. For punitive damages, to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof at trial;

**FOURTH CLAIM FOR RELIEF**

9. For compensatory damages to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof;

10. For interest on such compensatory damages at the legal rate;

11. For punitive damages to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof at trial;

**FIFTH CLAIM FOR RELIEF**

12. For compensatory damages to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof;

13. For interest on such compensatory damages at the legal rate;

14. For punitive damages to all Plaintiffs, including Plaintiff Steven Paul individually, according to proof at trial;

///

///

**SIXTH CLAIM FOR RELIEF**

15. For compensatory damages according to proof;

16. For interest on such compensatory damages at the legal rate;

17. For punitive and exemplary damages according to proof;

**SEVENTH CLAIM FOR RELIEF**

18. For the Assessment of treble damages against Defendants EYP and Cedar Lane Assets in a sum to be proven at trial.

19. For a declaration that the interest provisions of the March 21, 2007 Credit Agreement and the December 14, 2007 Amended and Restated Secured Credit Agreement are null and void and of no force or effect as to the Non-Related Plaintiffs.

**EIGHTH CLAIM FOR RELIEF**

20. For a declaratory judgment pursuant to the allegations contained herein.

**NINTH CLAIM FOR RELIEF**

21. For a preliminary and permanent injunction restraining and enjoining Defendants, and each of them, their agents, parties, subsidiaries, officers, employees and all those acting in concert with them, both directly and indirectly, from the following acts:

a. Refusing to release purported security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Disposition of Collateral, and the Transfer Statement and Notice of Assignment were issued;

b. For an Order compelling Defendants, and each of them to transfer and assign to Plaintiffs, including Plaintiff Steven Paul individually, any or all rights, title and interest with respect to the motion pictures identified in the Notice of Disposition of Collateral and Transfer Statement and Notice of Assignment not part of the Original Credit Agreement and sold at the public sale which took place on



HAMRICK & EVANS, LLP

October 16, 2009, or otherwise; and

c. For an Order compelling Defendants, and each of them, to release any and all purported security interests, including the Accommodation Security Agreement and the Laboratory Elements Pledge and Security Agreement, that form the purported basis upon which the Notice of Sale, the Disposition of Collateral and the Transfer Statement and Notice of Assignment were issued.

**ON ALL CLAIMS FOR RELIEF**

22. For reasonable attorneys' fees.

23. For costs of suit incurred herein; and

24. For such other and further relief as the Court may deem just and proper.

DATED: November 19, 2009

HAMRICK & EVANS, LLP

By: ______________________

MARTIN J. BARAB
A. RAYMOND HAMRICK III
ROBERT P. MITROVICH
Attorneys for Plaintiffs

HAMRICK & EVANS, LLP

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues triable to a jury.

Dated: November 19, 2009

Respectfully submitted

HAMRICK & EVANS, LLP

By:________________________

MARTIN J. BARAB
A. RAYMOND HAMRICK III
ROBERT P. MITROVICH
Attorneys for Plaintiffs